FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

OCT 1 9 2005

DAVID J. MALAND, CLERK
BY
DEPUTY

## In the United States District Court
## For the Eastern District of Texas
## Sherman Division

| | | |
|---|---|---|
| **Kathleen Baird, Plaintiff** | § | Civil Action: 4:05cv408 |
| | § | |
| v. | § | (Jury Demand) |
| | § | |
| **City of Melissa, Defendant** | § | Judge: Schneider |
| | § | |
| | § | Magistrate Bush |

### Original Complaint

Plaintiff Kathleen Baird ("Baird") brings this Original Complaint against Defendant City of Melissa ("Melissa"), and shows the following:

### Parties

1. Baird is an individual citizen of the State of Texas.

2. Melissa is a municipality incorporated under the laws of the State of Texas. Melissa can be served through its chief executive officer, Mayor David Dorman, at the Melissa Municipal Center, 901 State Highway 121, Melissa, Texas 75454.

### Jurisdiction

3. This Court has jurisdiction over the subject matter of this lawsuit because the action arises under Section 1 of the 14th Amendment of the United States Constitution and 42 U.S.C. §1983.

### Conditions Precedent

4. All conditions precedent have been performed or have occurred.

## General Factual Allegations—Background of the Dispute

5. This dispute involves the use of certain real property (the "Property"), located within the city limits of Melissa, and more fully described as "Situated in Collin County, Texas, and being all of Lots 1, 2, 3, 4 and 5, Block 24, of the Original Town of Melissa, Texas, according to the Plat recorded in Volume 5, Page 118, of the Collin County Deed Records."

6. Since 1984, the Property has been used as a recreational vehicle (RV) park.

7. Baird purchased certain the Property on or about February 26, 1996 with the intent of continuing to operate the RV park.

8. On or about November 21, 2001, Melissa served Baird with notice terminating any non-conforming protected status that she had regarding the operation of the RV park and demanding that she bring the property into compliance with all current codes and rules. The notice cited generally to its Revised Zoning Ordinance, but failed to point to any section prohibiting the use of RV parks in her zoning district. This notice further demanded the removal of all RVs from the Park.

9. On or about May 10, 2002, Melissa filed an Original Petition and Application for Temporary Injunction (the "State Lawsuit") in the 296th Judicial District of the State of Texas in Collin County. The State Lawsuit asked the court to declare (a) that "any non-conforming status on the Property terminated," (b) that "any nonconforming status that might have attached to the Property terminated based upon the Property

being operated unlawfully and illegally," (c) that Baird and the Property "are in violation of ordinances" of Melissa, and (d) that Baird "must bring the Property into compliance with all current codes, rules, regulations and ordinances of Melissa, including but not limited to removal of all RVs from the Property."

10. On or about July 17, 2003, during the pendency of the State Lawsuit, Melissa's Planning and Zoning Board (the "P&Z Board") held a public hearing to consider a proposed ordinance (the "Amortization Ordinance") for "establishing compliance regulations for non-conforming uses." The proposed Amortization Ordinance would give the City Council the authority to establish a compliance date for non-conforming uses, which would, in theory, give the owner of a non-conforming property time to recover his or her investment in the property. After review and public hearing, the P&Z Board recommended the City Council <u>not</u> approve adoption of this Amortization Ordinance.

11. On or about July 22, 2003, Melissa's City Council held a regularly scheduled meeting. One agenda items was a public hearing on the Amortization Ordinance that had been rejected by the P&Z Board, however, the City Council tabled the proposed Amortization Ordinance. Also at this meeting, the City Council reviewed appointments to Melissa's boards and commissions. All but one of the current members of the P&Z Board were removed and new members appointed. One of the new members of the P&Z was Michael Hudson, the mayor's partner in

DHT Investments, Inc. Aside from a voluntary shift in positions (a wife relinquished a board position to her husband for family reasons), the City Council replaced no other members of the boards or commissions.

12. On or about July 28, 2003, Melissa's City Council met in special executive session to discuss the proposed Amortization Ordinance with Melissa's legal counsel.

13. On or about July 29, 2003 Melissa called a special workshop for the newly appointed P&Z Board members to discuss a matter with Melissa's legal counsel. Immediately following this meeting, newly appointed P&Z Board member, Rosemary Kellum resigned.

14. On or about August 12, 2003, Melissa's City Council held a regularly scheduled meeting, and once again, the proposed non-conforming use ordinance was on the agenda. Councilman Reynolds moved to send the ordinance back to the P&Z Board for the purpose of having the old board members explain the rational for denying the ordinance.

15. On or about August 21, 2003, Melissa's P&Z Board held a public hearing to take action on the proposed Amortization Ordinance. A large contingency of townspeople appeared at the meeting and under public pressure and scrutiny, the P&Z Board tabled the item for three weeks (the published schedule for meetings of the P&Z Board is every third Thursday).

16. On or about August 28, 2003, only one week after tabling the matter for a period of three weeks, Melissa scheduled a meeting to be attended by

both the members of its P&Z Board and its City Council. The joint meeting did not occur, but the P&Z Board met on its own. The P&Z Board called the meeting to order, elected officers, including Mr. Hudson as chairperson, and moved into executive session a few minutes into the meeting. The P&Z Board reconvened into regular session about thirty minutes later, with no public discussion of the matter as posted, and the P&Z Board voted to approve the Amortization Ordinance and recommend passage by the City Council.

17. On or about September 9, 2003, Melissa's City Council met in regular session. Although the P&Z Board had not yet approved the minutes of its August 28, 2003 meeting, the City Council passed the Amortization Ordinance as Ordinance Number 03-20.

18. The Amortization Ordinance expressly requires a finding of public necessity before it may establish a compliance date for a non-conforming use. This finding requires consideration of several factors including the property's surrounding neighborhood, the property's degree of incompatibility with its zoning district, and effect the non-conforming use has on its surrounding area. If there is no public necessity for establishing a compliance date, the City Council is to refer the matter to the P&Z Board.

19. The Amortization Ordinance expressly requires that the City Council consider a number of factors in determining a reasonable amortization period, including the property owner's capital investment, the cost of

demolition, the return on capital investment to date, and the anticipated recovery of capital investment.

20. On October 7, 2003, Melissa's City Council met in special session to, according to its published agenda, "consider and act upon, pursuant to Melissa Ordinance No. 03-20, a request received from an individual, who resides or owns real property in the City of Melissa, to establish a compliance date for the uses located on Lots 1-5, Block 24, Melissa's Original Donation, Melissa, Texas and known as the Wildwood RV Park; setting a timetable and procedures for conducting the hearing; instructing the City Administrator to provide written notice of the hearing to the owner(s) of the subject property; and taking any other action relating to the request as deemed necessary by the City Council and/or required by Melissa Ordinance No. 03-20." The City Council set a further hearing on establishing a compliance date for October 21, 2003.

21. On October 21, 2003, Melissa's City Council met in special session to establish a compliance date for Baird's alleged non-conforming use of the Property. At this meeting, Baird presented evidence consisting of the history of the use of the Property, the history of the actions against Baird, and the valuation of her Property. Baird's presentation lasted approximately one hour. Melissa's City Council heard no contravening evidence, held no discussion on the matter, and made no substantive required findings as to the public necessity for establishing a compliance

date. Nonetheless, on a 4-1 vote, the City Council ruled that Baird must terminate any non-conforming use on or before November 15, 2003.

22. On February 25, 2004, the trial court in the State Lawsuit granted Melissa's motion for summary judgment.

23. On August 31, 2005, the Court of Appeals for the Fifth District of Texas affirmed the trial court's ruling in the State Lawsuit.

24. On October 7, 2005, Baird filed a Petition for Review with the Supreme Court of Texas.

**Count One—Violation of 42 U.S.C. §1983 by Defendant Melissa**

25. As set forth more particularly in ¶¶5-24, Melissa's actions in enforcing the Amortization Ordinance against Baird, during the pendency of the State Lawsuit, were arbitrary, unreasonable, capricious, in bad faith, and in violation of Baird's 14th Amendment procedural due process rights.

26. Melissa's actions were in violation of 42 U.S.C. §1983.

27. Melissa's actions have caused Baird to suffer economic injury.

**Count Two—Request for Permanent Injunction**

28. After a full trial on the merits, Baird will be entitled to a permanent injunction against Melissa, enjoining it from taking any action in the enforcement of its ordinances in violation of Baird's 14th Amendment and 42 U.S.C. §1983 rights.

### Damages and Attorney Fees

29. As a direct and proximate result of Melissa's conduct, Baird has suffered and continues to suffer diminution of revenue from operation of the RV park.

30. Further, as a direct and proximate result of Melissa's conduct, Baird has incurred legal costs in defending herself against Melissa's conduct.

31. Further, as a direct and proximate result of Melissa's conduct, it was necessary for Baird to obtain the undersigned attorneys to file this lawsuit. Upon judgment, Baird is entitled to an award of attorney fees and costs as provided by 42 U.S.C. 1988(b).

### Jury Demand

32. Baird requests that this matter be resolved by a jury.

### Request for Relief

Baird respectfully asks this Court to cite Melissa to appear and answer this Complaint, and after trial on the merits before a jury, grant judgment in favor of Plaintiff as follows:

   a) Award Baird just compensation for her economic injuries caused by Melissa's 14th Amendment and 42 U.S.C. §1983 violations, along with reasonable and necessary costs and attorney fees.

   b) Permanently enjoin Melissa from taking further action in the enforcement of its ordinances in violation of Baird's 14th Amendment and 42 U.S.C. §1983 rights.

   c) Grant all other relief deemed appropriate by this Court.

Respectfully submitted,

John R. Roach, Jr.
State Bar Number 90001601
William D. Cramer
State Bar Number 00790527
Roach LLP
5000 Legacy Drive, Suite 300
Plano, Texas 75024
972-801-9475
972-801-9407 (fax)
Attorneys for Plaintiff